UNITED STATES BANKRUPTCY COURT

WESTERN DISTRICT OF WISCONSIN

---

*In re:*                                         Case Number: 21-11358-12

>    JON G. STERNITZKY and
>    HEATHER M. STERNITZKY,
>
>        Debtors.

---

## MEMORANDUM DECISION

The matters before the Court are the Motions of State Bank Financial for Relief from Stay and Co-Debtor Stay and to Dismiss. The motions arise under 11 U.S.C. §§ 362(d)(1) and 1208(c). State Bank Financial claims bad faith as well as lack of adequate protection as the bases. Debtors posit that equity in the property together with a stipulation moot the motions.

For the reasons below, the Court grants the Motion for Relief From Stay and Co-Debtor Stay and the Motion to Dismiss.

### BACKGROUND

Jon and Heather Sternitzky ("Debtors") filed this Chapter 12. Debtors also operate or do business as Lynnview Farms, LLP ("Lynnview").

State Bank Financial ("State Bank") is a creditor of the Debtors. Gary and Joyce Sternitzky ("Gary and Joyce") and Lynnview are co-debtors on the debt to State Bank. Collectively, Debtors, Lynnview, and Gary and Joyce granted State Bank a mortgage on their real estate. Debtors and Lynnview signed a Farm Security Agreement granting security in equipment, fixtures,

crops, and inventory to State Bank. Gary and Joyce signed a mortgage on the

real estate previously owned by Gary and Joyce and now owned by Debtors.

Those interests were perfected.

This is the third related bankruptcy case for this farming business. The

cases and dates of filing are:

| Case No. | Date of Filing | Dismissal Date | Debtor |
|----------|----------------|----------------|--------|
| 18-11731 | May 21, 2018 | February 19, 2020 | Lynnview Farms, LLP |
| 20-12419 | September 25, 2020 | April 22, 2021 | Debtors |
| 21-11358 | June 23, 2021 | | Debtors |

The first bankruptcy case was filed by Lynnview. An agreement for

adequate protection was reached with the Debtors, Lynnview, and State Bank

in that case. In September 2019, a plan was confirmed. By February 2020,

Lynnview had defaulted on the adequate protection payments, moved to

suspend plan payments, and ultimately moved to dismiss the case.

After dismissal of the first bankruptcy, State Bank commenced a state

court foreclosure and replevin action against the Debtors, Gary and Joyce, and

Lynnview. But just before the lis pendens was recorded, Gary and Joyce

Sternitzky transferred ownership of the mortgaged real estate by quitclaim deed

to the Debtors. The transfer was without the consent of State Bank. While

Debtors do not dispute this, they argue that the transfer "allowed the [D]ebtors

to sell the wood land"[1] that generated funds toward a payment to State Bank.

That transfer caused certain judgment liens against the Debtors to attach to

---

[1] ECF No. 29 at p. 3, ¶ 2. ECF references are to the current case unless a case number
is included in the reference.

the mortgaged real estate, which required State Bank to amend its complaint to add judgment lienholder creditors of Debtors as defendants.

The second bankruptcy case (Case No. 20-12419) was filed by Debtors on the eve of a summary judgment hearing in state court.

State Bank then filed motions for relief from stay, to prohibit use of cash collateral, and to dismiss. And the Debtors objected to those motions. Again, a settlement between the parties was reached in bankruptcy court. The Stipulation:[2]

1.  Required principal and interest payments amortized over 25 years, with an 8-year balloon. This included specific provisions to be included in a plan.

2.  Required interest-only payments of $2,241 due on February 1 and March 1, 2021.

3.  Monthly payments of principal and interest of $4,922.18 per month were to start April 1, 2021.

4.  Sums were to be paid into escrow to permit payment of 2020 real estate taxes.

5.  The Debtors, Lynnview, and Gary and Joyce also consented to the immediate entry of judgment in the foreclosure action.[3] In exchange, State Bank agreed it would not execute or proceed

---

[2] Case No. 20-12419, ECF No. 89 ("Stipulation").

[3] *See* Case No. 20-12419, ECF No. 89-1, Exh. A—a State Court Stipulation and the exact form of the Judgment that the Debtors agreed could be entered in State Court.

with a sheriff sale until there was a default that was not timely
cured.

The Debtors soon defaulted. Debtors' counsel notified State Bank's
counsel that the Debtors intended to exit the dairy farming business. As part of
that exit plan, the Debtors filed a motion[4] to sell their dairy cattle and then a
corrected motion to sell dairy cattle.[5] They now assert "it created inadequate
dairy milk cows to support the debt load of the debtors."[6] This sale and its
consequences were the decision of the Debtors.

Then the Debtors moved to sell 160 acres of wooded land.[7] The Court
granted a motion to sell certain farm personalty that was collateral of another
creditor.[8] The Court then granted the motion to sell real estate with liens to
attach to the proceeds. Shortly after, the case was dismissed for Debtors'
failure to timely file a plan. Debtors did not oppose the motion to dismiss.

The Debtors elected to sell their dairy cows and convert the operation to
a cash grain operation. To do so, they borrowed funds to plant crops. They say
they intend to continue raising some replacement heifers and other animals for

---

[4] *Id.*, ECF No. 105.

[5] *Id.*, ECF No. 112.

[6] ECF No. 29 at p. 2, ¶ 1.

[7] Case No. 20-12419, ECF No. 129.

[8] Liens attached to proceeds and the first lienholder, FSA, was to receive the proceeds
from livestock.

more income. They suggest that somehow these changes will permit annual payments to creditors on the secured, priority, and unsecured debt.

Once again in state court, State Bank filed a motion seeking judgment against the Debtors based on the Stipulation. A day before a hearing on that motion, the Debtors filed this bankruptcy case.

While State Bank received proceeds from the sale of its collateral, the debt was not paid in full. There remains a claim of around $589,533.59 plus interest and attorneys' fees. There are also delinquent real estate taxes. The parties have stipulated to a method of addressing both the delinquent real estate taxes and those for the current year. That does not negate the fact that Debtors failed to timely make the payment of those taxes.

Debtors concede that the co-debtor stay does not apply to Gary and Joyce. It also appears they agree it does not apply to Lynnview property items, although they suggest that property is in large part currently owned by Debtors. They say Lynnview has "limited ownership rights in the property."[9]

Debtors failed to confirm and then complete a plan in their prior filing. Lynnview confirmed a plan but quickly defaulted. The Debtors "elected the strategy to dismiss the second Chapter 12 Plan and to proceed with the new Chapter 12 Plan."[10]

---

[9] ECF No. 29 at p. 3-4, ¶ 6.

[10] *Id.*, ECF No. 29 at p. 3, ¶ 3.

**JURISDICTION**

The Court has jurisdiction over this Motion for Relief from Stay and

Motion to Dismiss under 28 U.S.C. § 1334 through the reference from the

District Court. 28 U.S.C. § 157(a) and (b)(1). Because it involves core

proceedings under 28 U.S.C. § 157(b)(2)(A) and (G), the Court may enter final

judgment. 28 U.S.C. § 157(b)(1).

**DISCUSSION**

A. <u>Relief From Stay</u>

The filing of a bankruptcy petition automatically stays many actions,

including actions taken by the debtor's secured creditors to repossess or

foreclose on their collateral. 11 U.S.C. § 362(a). The decision to modify the

automatic stay pursuant to 11 U.S.C. § 362(d) is committed to the sound

discretion of the bankruptcy court. *In re C & S Grain Co.,* 47 F.3d 233, 238 (7th

Cir. 1995); *In re Boomgarden,* 780 F.2d 657, 660 (7th Cir. 1985); *In re*

*Holtkamp,* 669 F.2d 505, 507 (7th Cir. 1982).

Parties in interest may request relief from the stay. Section 362(d)(1)

provides the court shall grant relief from the stay for cause. The Code does not

define "cause." *In re Fernstrom Storage & Van Co.,* 938 F.2d 731, 735 (7th Cir.

1991). Instead, courts determine whether it exists case-by-case. *Id.*

Stay relief is available where a debtor has no equity in the property and

the property is not necessary for an effective reorganization. 11 U.S.C.

§ 362(d)(2). While Debtors focus on this ground for relief from stay, it is not the

basis for the motions before the Court and will not be addressed further in this

decision. Were it the basis, it would be State Bank's burden of proof on the issue of the debtor's equity in the property. 11 U.S.C. § 362(g)(1). That equity exists is undisputed.

The party opposing the relief—the Debtors—have the burden of proof on all other issues. 11 U.S.C. § 362(g)(2). Courts have interpreted section 362(g)(2) to mean the movant must first establish a prima facie case, which then must be rebutted by the debtor if relief from stay is to be avoided. *In re Rexene Products Co.*, 141 B.R. 574, 577 (Bankr. D. Del. 1992).

A lack of good faith in filing a petition constitutes cause for relief from the stay under 11 U.S.C. § 362(d)(1). *In re Foster*, 283 B.R. 917, 919 (Bankr. E.D. Wis. 2002) ("A lack of good faith in the filing of a bankruptcy petition constitutes 'cause' for relief from the automatic stay within the meaning of 11 U.S.C. § 362(d)(1)."); *Laguna Assocs. Ltd. P'ship v. Aetna Cas. & Sur. Co. (In re Laguna Assocs. Ltd. P'ship)*, 30 F.3d 734, 737 (6th Cir.1994). The good faith standard should be assessed objectively rather than subjectively. *In re Royalty Props., LLC*, 604 B.R. 742, 750 (Bankr. N.D. Ill. 2019) (citing *In re Schlangen*, 91 B.R. 834, 837 (Bankr. N.D. Ill. 1988)). This Court's inquiry will focus on the presence or absence of objective factors rather than the Debtors' subjective intent.

Among the factors the Court may consider as cause for relief from stay is a debtor's good or bad faith in commencing the bankruptcy case. *Milne v. Johnson (In re Milne)*, 185 B.R. 280, 283 (N.D. Ill. 1995). A determination of bad faith involves many factors, any one of which may be persuasive. *In re*

*Grieshop,* 63 B.R. 657, 662-63 (N.D. Ind. 1986); *see also In re Kerns,* 111 B.R. 777 (S.D. Ind. 1990). Such factors include, among others: previous bankruptcy petitions by the debtor or a related entity, that the bankruptcy petition allows the debtor to evade pre-petition court orders, that the petition was filed on the eve of a foreclosure, that there are few debts other than those owed to moving creditor(s), and that the debtor filed the bankruptcy petition solely to create the automatic stay. *Grieshop,* 63 B.R. at 663; *see also In re Maude H. Henderson & Daniel S. Henderson, IV Irrevocable Trust,* 395 B.R. 893, 902 (Bankr. D.S.C. 2008).

The Movant has established that virtually every one of these factors exists.

- The obligations to State Bank have been in default over a long time.

- There were motions by State Bank for relief from stay in each of the prior cases.[11] The Debtors defaulted on the Stipulations in each of the prior cases.

- There have been strategic filings by different entities and transfers of property to protect common assets.

---

[11] Case No. 18-11731, ECF No. 41, resolved by Stipulation at ECF No. 80; Case No. 20-12419, ECF No. 16, resolved by Stipulation at ECF Nos. 89, 91, and 97.

- There have been repeated failures to pay taxes on collateral despite the Debtors' obligation to do so.[12] That failure is not excused by Debtors' subsequent cure of taxes only to default on taxes again and then promise to bring them current

- The debt to State Bank is not consumer debt. It was incurred in the ordinary course of business.

- The filings and transfers of property were timed to precede events in the state court foreclosure action. The effects were repeated delays and stays in the state court.

- There were reasons for dismissal in the prior cases.

- Debtors decided for strategic purposes to dismiss their prior Chapter 12 and then to re-file this case.

- The current case, filed on the eve of another state court hearing, seeks to avoid the consequences of two prior agreements with State Bank.

As noted in *In re Yukon Enters., Inc.*, 39 B.R. 919 (Bankr. C.D. Cal. 1984), a guide for determining whether a petition was filed in good faith can be analyzed based on the Seventh Circuit decision in *In re Loeb Apartments, Inc.*, 89 F.2d 461 (7th Cir. 1937). The *Yukon* court quoted the *Loeb* court which stated:

---

[12] The 2017 taxes were delinquent in the *Lynnview* case. The 2019 and 2020 taxes were delinquent in the first Chapter 12 for these Debtors. The 2020 taxes remain delinquent here and the 2021 taxes will be due within a few months.

> Whether it [good faith] exists in any case depends upon the facts and circumstances presented. No one evidentiary fact can be given paramount weight in deciding the question. If it is obvious that a debtor is attempting unreasonably to deter and harass creditors in their bona fide efforts to realize upon their securities, good faith does not exist. But if it is apparent that the purpose is not to delay or defeat creditors but rather to put an end to long delays, administration expenses, . . . to mortgage foreclosures, and to invoke the operation of the [bankruptcy law] in the spirit indicated by Congress in the legislation, namely, to attempt to effect a speedy efficient reorganization, upon a feasible basis, . . . good faith cannot be denied." *In re Loeb Apartments, Inc.* , 89 F.2d at 463; *In re Levinsky*, 23 B.R. 210, 218 (Bankr. E.D.N.Y. 1982); *In re Thirtieth Place, Inc.*, 30 B.R. 503 (B.A.P. 9th Cir. 1983).

*Id.* at 921.

Strategically timing a filing to stay or cancel proceedings in a foreclosure does not, alone, justify relief from stay. But this is the third such related case. Neither of the prior cases ended in success. A delay of more than three years does not constitute "a speedy efficient reorganization."

Stipulations to resolve motions for relief from stay were reached with Lynnview. The Stipulations allowed Lynnview the opportunity to cure any defaults. Failure to cure was to entitle State Bank to immediate relief from stay. To remedy a default under its confirmed Plan, Lynnview sought a suspension of payment. It then withdrew this motion for suspension and moved to dismiss.

A foreclosure and replevin action was commenced. Title to the real estate was quitclaimed without State Bank's consent. The result was a delay in the foreclosure proceedings. On the eve of a summary judgment hearing, the Debtors filed their first Chapter 12. Nine months had passed with no payment to State Bank.

10

A stipulation was reached with Debtors in their first bankruptcy case (the "Stipulation"). It contained agreed plan terms and a state court stipulation for judgment that could be immediately entered but would not be the subject of execution provided Debtors were not in default on agreed payments. The Court approved this Stipulation and granted limited relief from stay to permit State Bank to enter the state court judgment.

The Stipulation also provided for immediate relief from stay if defaults were not cured. Debtors defaulted. They did not timely file any plan. The Trustee moved to dismiss. The Debtors did not oppose that motion. The case was then dismissed.

Action resumed in state court. State Bank asked for entry of the Judgment as agreed by Debtors in the Stipulation. Once again, the Debtors acted shortly before action in the state court by filing this case. They did so to prevent the entry of the agreed Judgment and to avoid the consequences of their prior agreements.

The serial filings and transfers of property, compounded by the lack of payments, evoke bad faith. The second case was filed about six months after dismissal of the first case. It remained open for slightly more than six months without filing any plan. The current case was filed a mere 62 days after dismissal of the Debtors' prior case. These serial filings all caused delay of foreclosure proceedings at strategic times.

Debtors' principal asset is real estate that is the subject of State Bank's motions. And the mortgaged property was transferred into the names of these

Debtors without consent by quitclaim deed. This also evidences intent to delay

or hinder the foreclosure. The manifest intent of the Debtors has been to avoid

a foreclosure and to avoid the consequences of failures to make payments or

honor the Stipulation or any other agreement. It was not to effect a speedy,

efficient reorganization on a reasonable basis.

Unable to propose a confirmable plan or perform in their prior Chapter

12, the Debtors admit they made a strategic decision to have that case

dismissed and to then simply file another Chapter 12. Nor has there been any

argument by Debtors that a substantial change in financial circumstance arose

in the 62 days between the dismissal of their prior case and the filing of this

case. This shows a desire to circumvent pending litigation and Stipulations,

revealing an intent to abuse the judicial process. *In re Anthony*, 481 B.R. 602

(D. Neb. 2012).

State Bank's motion asks for confirmation there is no co-debtor stay.

Debtors concede the lack of a co-debtor stay. Additionally, the discussion above

would support relief from any such stay.

State Bank has also requested a waiver of the 14-day stay under Rule

4001(a)(3). Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure

provides that an order granting relief from an automatic stay is stayed until the

expiration of 14 days after the order is entered unless the court orders

otherwise. Fed. R. Bankr. P. 4001(a)(3). "The purpose of this provision is to

permit a short period of time for the debtor or the party opposing relief to seek

a stay pending an appeal of the order." 9 *Collier on Bankruptcy* ¶ 4001.05 (16th

12

ed. 2016). The party obtaining relief from the automatic stay may persuade the

court to grant a shorter time period for the debtor to seek a stay pending

appeal, or even grant no time. *Id.* Still, a complete waiver of the 14-day stay in

Rule 4001(a)(3) should only be granted in rare cases when ordered over the

objection of any party that wishes to appeal, especially if the appeal may

become moot without a stay. *Id.*

"When debtors have exhibited a lack of effort in their bankruptcy

proceedings and have instead engaged in serial filings to thwart the efforts of

secured creditors exercising their rights under state law, courts have found

that these serial filings are evidence of bad faith and abuse of the bankruptcy

process." *In re McKenzie*, Case No. 19-10130, 2019 WL 1750910, at *4 (Bankr.

S.D.N.Y. Mar. 25, 2019). *In re McKenzie* is instructive in this regard. There,

debtor filed four bankruptcies, three of which were strategically timed just days

before a foreclosure sale on the property. *Id.* And the court found that debtor

did not make good-faith efforts to prosecute his bankruptcy case. *See id.*

This case raises similar concerns. This is the third related bankruptcy.

Two of the cases were strategically timed just before actions in state court. The

Debtors have also shown repeated need for extensions of time in this Court,

resulting in further delay. Debtors have missed post-petition payments to

another creditor and permitted real estate taxes to continue to accrue. They

have repeatedly broken their promises and agreements. The Debtors' "remedy"

for these failures are repeated bankruptcy filings without any actual

reorganization. The Debtors have had more than three years to achieve

reorganization. They have failed to do so. Debtors' actions reveal a lack of good faith in prosecuting their bankruptcy case.

For these reasons the Court grants relief from stay and waives the temporary stay provided in Rule 4001(a)(3). Waiving this stay will not prejudice Debtors. It merely permits State Bank to take immediate action to pursue the entry of judgment in state court. Scheduling a hearing, obtaining a judgment, and then setting an auction of any personal property or a sale of real estate after the expiration of whatever redemption period may be set will take far longer than the 14-day stay period.

B. <u>Motion to Dismiss</u>

Bankruptcy provides a refuge and relief for the honest but unfortunate debtor. It is not, however, a haven for debtors seeking to avoid their obligations and agreements through strategic serial filings. The main effect of serial filings is to achieve a continuing re-imposition of the automatic stay. The result is delaying exercise of creditors' rights against their collateral. Here, there was also the transfer of collateral without consent to avoid performance of agreements.

The Code does not prohibit such filings per se. Each case must be decided on its facts.

Section 1208 of the Code provides that a "party in interest" may move to dismiss a debtor's Chapter 12 case. State Bank is a party in interest because it is a creditor with a sufficient stake in the outcome of the proceedings. *Mitan v.*

Duval (In re Mitan), 178 F. App'x 503, 506 (6th Cir. 2006); *In re Abijoe Realty
Corp.*, 943 F.2d 121, 125 (1st Cir. 1991).

Section 1208(c) provides that a court may dismiss a Chapter 12 case "for
cause." Although examples of cause are listed in section 1208(c), the list is
illustrative and not exhaustive. *Michels v. Maynard Sav. Bank* (*In re Michels*),
305 B.R. 868, 872 (B.A.P. 8th Cir. 2004). The good faith standard in Chapter
12 is the same as the requirement in a Chapter 13. 8 *Collier on Bankruptcy*
¶ 1225.02[3] (Alan S. Resnick & Henry J. Sommer eds., 16th ed.).

Courts have routinely found that a debtor's lack of good faith in filing for
bankruptcy relief can serve as grounds for dismissal. *Trident Assocs. Ltd. P'ship
v. Metropolitan Life Ins. Co. (In re Trident Assocs. Ltd. P'ship),* 52 F.3d 127, 130
(6th Cir. 1995); *In re Burger,* 254 B.R. 692, 696 (Bankr. S.D. Ohio 2000). A
bankruptcy court has broad discretion to determine whether a "for cause"
dismissal of a bankruptcy case is warranted. *Gateway N. Estates, Inc. v. U.S.
Trustee (In re Gateway N. Estates, Inc.*), 165 B.R. 427, 428 (E.D. Mich. 1994).
Thus, the decision to dismiss the case will be upheld unless it was an abuse of
discretion, defined as "a definite and clear conviction that the trial court
committed a clear error of judgment." *AMC Mortg. Co. v. Tenn. Dep't of Rev.* (*In
re AMC Mortg. Co.*), 213 F.3d 917, 920 (6th Cir. 2000) (citing *Bowling v. Pfizer,
Inc.,* 102 F.3d 777, 780 (6th Cir. 1996)).

There is no single test for determining whether a bankruptcy petition was
filed in good faith. *Trident Assocs. Ltd. P'ship,* 52 F.3d at 131. Instead, it "is a
fact-specific and flexible determination" that must be made case-by-case by

looking at the totality of the circumstances. *Alt v. United States (In re Alt),* 305
F.3d 413, 419 (6th Cir. 2002); *Metro Emps. Credit Union v. Okoreeh–Baah* (*In re
Okoreeh–Baah*), 836 F.2d 1030, 1033 (6th Cir. 1988) ("Good faith is an
amorphous notion, largely defined by factual inquiry."). Factors to consider in
making a good faith filing determination include:

- Unreasonable delay prejudicial to creditors;

- The nature of the debt and timing of the petition;

- The debtor's motive in filing the petition;

- How the debtor's actions affected creditors;

- The debtor's treatment of creditors both before and after the
  petition was filed;

- The debtor's sincerity in petitioning for bankruptcy relief; and

- The amount of payment offered by debtor showing the debtor's
  sincerity to repay the debt.

*Keith's Tree Farms v. Grayson Nat'l Bank*, 535 B.R. 647, 654 (W.D. Va. 2015)*;
Alt,* 305 F.3d at 419.

"[N]o list is exhaustive of all the conceivable factors which could be
relevant when analyzing a particular debtor's good faith . . . . [N]o one factor
should be viewed as being a dispositive indication of the debtor's good faith." *In
re Mehlhose,* 469 B.R. 694, 708 (Bankr. E.D. Mich. 2012) (citing *Chardin v.
Caldwell (In re Caldwell),* 851 F.2d 852, 860 (6th Cir. 1988)). "The ultimate
inquiry behind this judicially created ground for dismissal is whether the

debtor has abused the bankruptcy process." *Burger,* 254 B.R. at 696 (citation omitted) (internal quotation marks omitted).

Courts have concluded that cause to dismiss a bankruptcy case exists when the timing of the filing leaves no doubt that the primary, if not sole, purpose of the filing was a mere litigation tactic, or when a bankruptcy case consists of essentially a two-party dispute. *See In re Lin,* 499 B.R. 430, 437 (Bankr. S.D.N.Y. 2013); *In re Plagakis,* No. 03 CV 0728(SJ), 2004 WL 203090, at *4 (E.D.N.Y. Jan. 27, 2004); *In re HBA East, Inc.,* 87 B.R. 248, 259-60 (Bankr. E.D.N.Y. 1988).

Extensive facts are recited above and will not be repeated here. But more facts about the history of these serial cases place the Debtors' conduct in sharp focus. Lynnview took every opportunity to slow the process of its case. This included:

1. Seeking an extension of time to file a valuation motion on the last day to file such motions. Then filing two new motions for further extensions of time.

2. The day after the plan was due, filing a motion to extend time to file a plan until after entry of a valuation order.

3. Objecting to State Bank's motion for relief from stay on the last possible day.

4. Waiting almost ten months to file any operating report.[13]

---

[13] ECF Case No. 18-11731, Dkt. Nos. 95-97

5. Defaulting on plan payments and failing to provide required information within months after confirmation.

6. Further seeking a suspension of plan payments about 125 days after confirmation of the Lynnview plan and then amending that motion less than a month later.

7. Withdrawing this motion and then seeking dismissal of the case.

After dismissal of the Lynnview case, a foreclosure and replevin action was started against Debtors, Lynnview, and Gary and Joyce. Just before the lis pendens was filed, the Debtors took title to the real estate owned by Gary and Joyce. This slowed the foreclosure and replevin. Then, on the eve of a hearing in the state court action, the Debtors filed their first Chapter 12.

Debtors also exploited the opportunities to seek extensions of time and to defer or delay matters in their Chapter 12. They moved to extend the time to file schedules. They objected to motions for relief from stay or dismissal. Debtors waited a month before seeking permission to use cash collateral. Even though real estate value had been an issue in the Lynnview case, an extension of time to file valuation motions was filed at the eleventh hour.

The 2017 real estate taxes were delinquent when the Lynnview bankruptcy was filed. Debtors, Lynnview, and Gary and Joyce agreed to a plan for payment of those taxes and to escrow funds for 2018 and after. Apparently the 2017 and 2018 real estate taxes were paid. Despite those payments, Debtors were unable to remain current with real estate taxes. The 2019 real estate taxes were delinquent and there were accrued 2020 real estate taxes in

18

Debtors' first bankruptcy. Debtors agreed to make payment and to escrow for these taxes. While some amounts were paid toward the 2019 and 2020 real estate taxes, they were not paid in full when due. When the current case was filed, both remained delinquent and the 2021 real estate taxes will soon become due.

Debtors agreed to a modification of the stay to permit a state court judgment by State Bank. Extension of time to file a plan was, as in Lynnview, requested. A plan was filed and then Debtors sought permission to sell their herd because they decided not to continue in dairy farming. Instead, they elected to convert to a cash grain operation. Shortly after they asked to sell some land. Their plan was withdrawn and more time was requested to file a plan. Then, about six months after filing that case, the Debtors moved to dismiss. The case was dismissed. The Debtors admit the dismissal was a "planned strategy."[14]

Back in state court, State Bank once again sought entry of the Judgment that Debtors, Lynnview, and Gary and Joyce had agreed could be entered. Yet again a hearing was scheduled. And again, right before a hearing in state court, Debtors filed this case.

Only one monthly operating report has been filed.[15] Besides the State Bank motion for relief from stay, Nationstar moves for relief from stay.[16] It is a

---

[14] ECF No. 29, p. 3, ¶ 3.

[15] ECF No. 91.

[16] ECF No. 99.

secured creditor. It holds a mortgage on the Debtors' homestead. It says that

five post-petition payments have been missed as of November 1, 2021. Debtors

do not deny a lack of payments. Rather, Debtors say there was a forbearance of

unspecified terms so "its undeterminable as to what the exact arrearage would

be . . . ."[17] Debtors then argue there is an equity cushion, they will pay the

post-petition arrearage (in an amount greater than listed in the motion for relief

from stay) over 60 months, and will make monthly payments starting in

January 2022.

Debtors do not propose any current payments to State Bank. Instead,

they simply say that a plan would provide an annual payment because that is

all that can be afforded. This is little different from the position taken by

Debtors in their prior Chapter 12. They objected to relief from stay in that case

arguing there was simply an equity cushion and the cushion, together with

interest payments on back taxes and a tax escrow, should be enough to deny

relief from stay.[18] That dispute was resolved by the Stipulation with Debtors

promising monthly payments.[19] As noted, the Debtors failed to honor their

agreements under that Stipulation.

While most of the extensions requested are not unusual, it is the

accumulation across multiple cases that highlights the Debtors' lack of good

faith. Based on the record here, the Court concludes that cause exists to

---

[17] ECF No. 102, p. 1, ¶ 1.

[18] Case No. 20-12419. ECF No. 26, p. 3 ¶7.

[19] Case No. 20-12419, ECF No. 89, pp. 4-5, ¶¶4Aiii - D.

dismiss this bankruptcy case pursuant to 11 U.S.C. § 1208. State Bank has shown:

- Lynnview, a related entity, failed to perform under its confirmed Chapter 12 plan.

- There have been repeated and unreasonable delays by Debtors prejudicial to creditors.

- The many motions for extension of time followed by amended motions across the three cases shows a pattern of delay.

- Not only the failure to meet the terms of a Stipulation or confirmed plan but to wait until a day or less before state court hearings to file bankruptcy confirms litigation strategy and not an honest effort to perform.

Collectively, Debtors, Lynnview, and Gary and Joyce have had more than 3½ years to present a reorganization plan that is feasible and then to perform under such a plan. More time was repeatedly granted to afford them that opportunity. Their actions violate the purpose and spirit of Chapter 12. *In re Beswick*, 98 B.R. 904 (N.D. Ill. 1989).

The motive in filing this case was to delay any foreclosure or replevin. A delay of 3½ years to any effective reorganization is unreasonable and prejudicial to creditors. Not once but twice the Debtors reached comprehensive agreements with creditors only to breach them and try to avoid the consequences by filing another bankruptcy.

Based on the pattern of serial bankruptcy filings on the eve of adverse consequences in a foreclosure and replevin process, the two-party nature of the dispute, and the other actions of Debtors recited above, the Court concludes there is cause to dismiss or convert this case pursuant to 11 U.S.C. § 1208.

C. <u>Bar to Re-Filing</u>

The Debtors' treatment of creditors both before and after the petition was filed shows repeated failures of payment and broken promises. The defaults under the Lynnview confirmed plan coupled with the uncured defaults under the Stipulation support a conclusion this case is filed in bad faith. So do the repeated real estate tax delinquencies, failure to escrow for those taxes, and need to extend payments over extended time. These things, coupled with the delay in payments to other creditors and the repeated filings, are additional factors in concluding there is a lack of good faith in the filing of this case. The pattern of failures belies any sincerity in petitioning for bankruptcy relief.

The court has discretion to dismiss this case with prejudice to the re-filing of a subsequent bankruptcy case. 11 U.S.C. § 349(a); *see Casse v. Key Bank Nat'l Ass'n (In re Casse)*, 198 F.3d. 327 (2d Cir. 1999); *Glassman v. Feldman (In re Feldman)*, 597 B.R. 448, 460 (Bankr. E.D.N.Y. 2019) (dismissing with prejudice case filed solely to stay determination of a disputed claim). Considering the filing of three bankruptcy petitions for the clear purpose of delaying a foreclosure or replevin, the failure of the Lynnview plan, and the circumstances surrounding dismissal of Debtors' first and second Chapter 12 cases, there is a basis to bar re-filing for a period of time. These serial filings

22

have interfered with the ability of State Bank to enforce its rights and remedies.
The Debtors have increased the cost of trying to do so and created the need for
multiple interrupted hearings in state court. The bankruptcy court has the
authority to bar a "bad faith" debtor from re-filing another petition as part of
the court's inherent power to prevent abusive behavior and to manage the
practice of law in the cases that come before it. For these reasons, dismissal of
this case with a 180–day bar against re-filing appears to be not only warranted,
but appropriate. Any further bankruptcy proceedings affecting the State Bank
collateral at issue will be closely scrutinized.

### Conclusion

For the reasons discussed above, the Court finds that the automatic stay
should be lifted pursuant to 11 U.S.C. § 362(d)(1). There is no co-debtor stay.
The Court also finds, however, that if such a stay did apply, it should be lifted.
The Court also concludes waiver of the temporary stay provided in Fed. R.
Bankr. P. 4001(A)(3) is appropriate.

The Court further finds and concludes that Debtors' Chapter 12 petition
was filed in bad faith. Cause exists for dismissal under 11 U.S.C. § 1208(c).
The Court also concludes that a 180-day bar against re-filing is warranted
under 11 U.S.C. § 109(g).

This decision shall constitute findings of fact and conclusions of law
pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil
Procedure.

A separate order consistent with this decision will be entered.

Dated: December 23, 2021

BY THE COURT:

_____

Hon. Catherine J. Furay
U.S. Bankruptcy Judge