UNITED STATES BANKRUPTCY COURT

WESTERN DISTRICT OF WISCONSIN

*In re:*

JON G. STERNITZKY and
HEATHER M. STERNITZKY,

Debtors.

Case Number: 21-11358-12

# DECISION

This matter comes before the Court on the Motion to Stay Any Actions by State Bank Financial and Any Other Creditor in the Chapter 12 Proceedings Relating to an Order Granting Relief From Stay and Co-Debtor Stay and Dismissal of the Chapter 12 Proceedings ("Motion") of Jon G. Sternitzky and Heather M. Sternitzky ("Debtors") (ECF No. 130)[1] and the objection of State Bank Financial ("State Bank") to the Motion ("Objection") (ECF No. 133).

## PROCEDURAL HISTORY

In considering the Motion, the Court has evaluated the arguments of the parties at the January 25, 2022, hearing on the Motion, and has reviewed and considered the Motion itself and the Objection, together with:

1)  State Bank's Motion to Dismiss (ECF No. 18);

2)  State Bank's Motion for Relief from Stay and for Relief From Co-Debtor Stay (ECF No. 20);

---

[1] ECF references are to the current case unless a case number is included in the reference.

3) State Bank's Motion for Conditional Use/Prohibit Use of Cash Collateral (ECF No. 22);

4) Debtors' Objection to Motion to Dismiss (ECF No. 28);

5) Debtors' Objection to Motion for Relief From Stay (ECF No. 29);

6) Debtors' Objection to Motion for Conditional Use/Prohibit Use of Cash Collateral (ECF No. 30);

7) Debtors' Motion/Offer for Adequate Protection (ECF No. 32);

8) State Bank's Objection to Debtors' Motion/Offer for Adequate Protection (ECF No. 46);

9) Argument of counsel at hearing on August 23, 2021, on State Bank's Motion to Dismiss and for Relief From Stay;

10) Brief in Support of State Bank's Motion for Relief From Stay and for Relief from the Co-Debtor Stay and State Bank's Motion to Dismiss (ECF No. 66);

11) Chapter 12 Trustee's Motion to Dismiss (ECF No. 70);

12) Stipulation between Debtors and State Bank resolving use of cash collateral and adequate protection (ECF No. 71);

13) Debtors' Brief in Opposition to State Bank's Motion for Relief from Stay, Relief From Co-Debtor Stay, and Motion to Dismiss (ECF No. 88);

14) Debtors' Objection to Chapter 12 Trustee's Motion to Dismiss (ECF No. 89); and

15) Memorandum Decision (ECF No. 121).

The Court also reviewed the confirmed plan in the related Lynnview Farms, LLP case,[2] the Stipulation filed in the Debtors' prior Chapter 12,[3] and the motions to sell in that case (ECF Nos. 105, 112, and 129). Finally, all other docket entries identified in the Memorandum Decision have been reviewed.

The Court has also considered all orders underlying the appeal including orders in the Debtors' prior Chapter 12 and orders in the Lynnview Farms, LLP Chapter 12. Although these items together do not constitute an exhaustive list of the filings here and the two prior related Chapter 12 proceedings, the Court has taken judicial notice of the contents of the dockets in all three matters. *See In re Fin. Partners, Ltd.*, 116 B.R. 629, 635 (Bankr. N.D. Ill. 1989).

## BACKGROUND

Debtors filed this Chapter 12. Debtors also operate or do business as Lynnview Farms, LLP ("Lynnview"). State Bank is a creditor of the Debtors. Gary and Joyce Sternitzky ("Gary and Joyce") and Lynnview are co-debtors on the debt to State Bank. Collectively, Debtors, Lynnview, and Gary and Joyce granted State Bank a mortgage on their real estate. Debtors and Lynnview signed a Farm Security Agreement granting security in equipment, fixtures, crops, and inventory to State Bank. Gary and Joyce signed a mortgage on the real estate previously owned by Gary and Joyce and now owned by Debtors. Those interests were perfected.

---

[2] Case No. 18-11731, ECF No. 124, including the related motions to suspend plan payments and the Motion to Dismiss, ECF No. 152.

[3] Case No. 20-12419, ECF No. 89 ("Stipulation").

3

This is the third related bankruptcy case for this farming business. The cases and dates of filing are:

| Case No. | Date of Filing | Dismissal Date | Debtor |
|---|---|---|---|
| 18-11731 | May 21, 2018 | February 19, 2020 | Lynnview Farms, LLP |
| 20-12419 | September 25, 2020 | April 22, 2021 | Debtors |
| 21-11358 | June 23, 2021 | December 23, 2021 | Debtors |

Lynnview confirmed a plan. Within six months, Lynnview had defaulted on the adequate protection payments, moved to suspend plan payments, and ultimately moved to dismiss the case. State Bank proceeded with an action in state court for foreclosure and replevin against the Debtors, Gary and Joyce, and Lynnview. But just before the lis pendens was recorded, Gary and Joyce Sternitzky transferred ownership of the mortgaged real estate by quitclaim deed to the Debtors. The transfer was without the consent of State Bank. While Debtors do not dispute this, they argued that the transfer "allowed the [D]ebtors to sell the wood land"[4] that generated funds toward a payment to State Bank. That transfer caused certain judgment liens against the Debtors to attach to the mortgaged real estate, which required State Bank to amend its complaint to add judgment lienholder creditors of Debtors as defendants.

On the eve of a summary judgment hearing, the Debtors filed their first Chapter 12. They failed to confirm and or complete a plan in that case. Agreements for adequate protection payments, payments of delinquent real estate taxes, and for entry of a state court judgment were reached and approved by this Court. Those agreements were breached. The Chapter 12

---

[4] ECF No. 29 at p. 3, ¶ 2.

4

Trustee moved to dismiss and the Debtors "elected the strategy to dismiss [their] . . . Chapter 12 Plan and to proceed with the new Chapter 12 Plan."[5]

Once again, State Bank returned to state court seeking judgment on its claims. And again the Debtors filed a bankruptcy the day before the hearing in state court.

During this case, State Bank moved for Relief From Stay and Co-Debtor Stay and to Dismiss, claiming bad faith as well as lack of adequate protection as the bases. This Court granted both motions. Debtors appealed and filed the Motion seeking a stay while the appeal is pending. They posit that payment of the 2021 real estate taxes is sufficient support for a stay, that no bond is reasonably necessary because of the equity they believe exists, nor are any payments to State Bank justified during the appeal.

## DISCUSSION

The issue before the Court is governed by Rule 8007 of the Federal Rules of Bankruptcy Procedure, which sets the standards for stays pending appeal. Rule 8007[6] provides that:

**(a)(1) In general**

> Ordinarily, a party must move first in the bankruptcy court for the following relief:
> (A) a stay of a judgment, order, or decree of the bankruptcy court pending appeal;
> (B) the approval of a bond or other security provided to obtain a stay of judgment;
> (C) an order suspending, modifying, restoring, or granting an injunction while an appeal is pending; or

---

[5] ECF No. 29 at 3, ¶ 3.

[6] Rule 8005 was revised in 2014 and renumbered to Rule 8007.

5

> (D) the suspension or continuation of proceedings in a case or other relief permitted by subdivision (e).
>
> . . .
>
> **(e) Continuation of proceedings in the bankruptcy court**
>
> Despite Rule 7062 and subject to the authority of the district court, BAP, or court of appeals, the bankruptcy court may:
> (1) suspend or order the continuation of other proceedings in the case; or
> (2) issue any other appropriate orders during the pendency of an appeal to protect the rights of all parties in interest.

Fed. R. Bankr. P. 8007.

A motion for a stay pending appeal is an exceptional form of relief and requires a considerable showing from the movant. *In re Beswick,* 98 B.R. 904, 907 (N.D. Ill. 1989); *see also In re Running,* No. 89 C 20211, 1990 WL 53063, at *1 (N.D. Ill. April 17, 1990). With a balancing test such as the one implicated by Rule 8007, the court has the authority to weigh particular factors more heavily than others, depending on the unique circumstances of a case. *In re Dakota Rail, Inc.,* 111 B.R. 818, 820 (Bankr. D. Minn. 1990).

When evaluating the request for a stay, if the appeal is meritless, then the other factors need not be addressed. *Cavel Int'l, Inc. v. Madigan,* 500 F.3d 544, 547 (7th Cir. 2007). If, however, an appeal has some merit, then the Court uses a "sliding scale" approach, where "the greater the moving party's likelihood of success on the merits, the less heavily the balance of harms must weigh in its favor, and vice versa." *In re A&F Enters., Inc. II v. IHOP Franchising LLC (In re A&F Enters., Inc. II),* 742 F.3d 763, 766 (7th Cir. 2014) (quoting *Cavel Int'l, Inc.,* 500 F.3d at 547-48); *see also In re Quade,* 496 B.R. 520, 526 (Bankr. N.D. Ill. 2013) ("The party seeking a stay has the burden of proving it has met

6

the first two threshold factors in a preliminary analysis, and if the [Debtors] succeed, all four factors are considered on a sliding scale.").

The decision to grant or deny a stay pending appeal is committed to the discretion of the bankruptcy court. *See Nken v. Holder,* 556 U.S. 418, 433 (2009). Four factors are used in deciding whether to grant a motion for stay pending appeal:

> 1) whether the [movant] is likely to succeed on the merits of the appeal; 2) whether the [movant] will suffer irreparable injury absent a stay; 3) whether a stay would substantially harm other parties in the litigation; and 4) whether a stay is in the public interest.

*In re Forty-Eight Insulations, Inc.,* 115 F.3d 1294, 1300 (7th Cir. 1997). The first two factors are the most critical. *Nken,* 556 U.S. at 434.

As the movants, Debtors have a threshold burden to meet the first two factors: "[T]hey must show that they have *some* likelihood of success on the merits and that they will suffer irreparable harm if the requested relief is denied." *In re Forty-Eight Insulations, Inc.,* 115 F.3d at 1300 (emphasis added). If the Debtors are successful, the Court must then move on "to balance the relative harms considering all four factors using a 'sliding scale' approach." *Id.* at 1301.

But if the Debtors fail to make the requisite showings on either of the first two factors, the Court need not examine the balance of harms, "and the stay should be denied without further analysis." *Id.* at 1301. If the Debtors meet the preliminary threshold of the first two factors, but fail to meet the overall standards, the motion for stay should be denied.

7

*1. Likelihood of Success on the Merits*

To meet the threshold burden on the likelihood of success in a preliminary injunction context, Debtors need only demonstrate that their chance of success is "better than negligible." *Id.* But "in the context of a stay pending appeal, where the applicant's arguments have already been evaluated on the success scale, the applicant must make a stronger threshold showing of likelihood of success to meet his burden." *Id.* at 1301; *see also Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog,* 945 F.2d 150, 154 (6th Cir. 1991) (concluding that a stay movant must raise "serious questions going to the merits") (internal citations omitted); *Adams v. Walker,* 488 F.2d 1064, 1065 (7th Cir. 1973) (requiring a stay movant to make a "strong" and "substantial" showing of likelihood of success on the appeal).

The Seventh Circuit has held that in the context of a stay pending appeal, "the Claimants need to demonstrate a substantial showing of likelihood of success, not merely the possibility of success, because they must convince the reviewing court that the lower court, after having the benefit of evaluating the relevant evidence, has likely committed reversible error." *In re Forty-Eight Insulations, Inc.,* 115 F.3d at 1301, citing *Griepentrog,* 945 F.2d at 153. Debtors argue they have "a reasonable chance of success" on the merits. Debtors believe the Court did not use a "totality of the circumstances" test which they assert is the proper standard set forth by cases such as *In re Smith,* 848 F.2d 813 (7th Cir. 1988) as well as *In re Schaitz,* 913 F.2d 452 (7th Cir. 1990).

Debtors say there are several instances of conduct that show good faith on behalf of the Debtors that this Court did not examine or comment on, and, if the Court had, under a "totality of the circumstances test" the conduct of the Debtors weighs in favor of finding good faith. Examples of "good faith acts" the Debtors allege this Court did not consider include payments made to State Bank and substantially changing "the financial situation from a dairy cattle farm operation to a cash crop operation." Debtors also assert that this Court should have held an evidentiary hearing to establish a record of good or bad faith.

Contrary to the argument of the Debtors, the Court did consider each of the events the Debtors contend demonstrated good faith. All the examples cited by the Debtors were in the extensive filings identified by the parties in connection with the Motion for Relief from Stay and the Motion to Dismiss. And, as noted, the Court reviewed the docket in the above-captioned case as well as the two prior related Chapter 12 cases.

The Debtors never requested an evidentiary hearing. Debtors had several months to do so. Instead, they submitted written briefs detailing the laundry list of items they believed demonstrated good faith. The Court relied on and considered all those facts and arguments. These facts and arguments include all the "good faith" acts the Debtors allege, such as payments made to State Bank, the change in the operations from cows to a cash crop operation, and the motive behind Debtors' decision to seek bankruptcy relief. Taking all the facts and arguments into consideration, this Court still found overwhelming

9

Main Document    Page 10 of 20

evidence of bad faith. As to payments made to State Bank, for instance, the payments previously agreed to had been in default. The Debtors were once again behind on real estate taxes. The pattern of delay, strategic timing of dismissals of prior cases, re-filings on the eve of state court decisions, and repeated breaches of promises supported the conclusion of the Court. Further, simply proposing some payments did not overshadow or outweigh all the bad acts and omissions.

It is true that in the part of the decision discussing good and bad faith related to the Motion for Relief From Stay, this Court did not use the phrase "totality of the circumstances." Nor does the decision explicitly address how factors such as Debtors' payments to State Bank and an intention to convert their farm from a dairy cattle farm operation to a cash crop plays into a good or bad faith determination. That said, what this Court did was follow the guide for determining whether a petition was filed in good faith presented in *In re Loeb Apartments, Inc.*, 89 F.2d 461 (7th Cir. 1937), which requires a court look at "the facts and circumstances presented." Thus, the Court "looked at the facts and circumstances presented" (which includes the Debtors' intention to convert their farm and their payments to State Bank) and found overwhelming evidence of bad faith based on, among other things, the strategic serial filings, timing of filings, transfers of property, the repeated defaults that occurred, and the three-plus years they delayed any genuine reorganization or remedy for creditors.

Debtors have not raised any substantial issues or persuasive reasoning showing they have a heightened or substantial likelihood of success on appeal. The Court finds the first factor is not met. Even so, the Court will consider the remaining factors.

*2. Irreparable Injury Absent a Stay*

To meet the threshold burden of the second factor, Debtors must show that the harm alleged is both "certain and immediate, rather than speculative or theoretical . . . . [Debtors] must provide some evidence that the harm has occurred in the past and is likely to occur again." *In re Quade*, 496 B.R. 520, 527-28 (Bankr. N.D. Ill. 2013), quoting *Griepentrog*, 945 F.2d at 154. A fear of harm that is only speculative does not meet the definition of an irreparable injury. *In re 203 N. LaSalle St. P'ship*, 190 B.R. 595, 598 (N.D. Ill. 1995) (the "irreparable injury" alleged by the movant-creditor was found to be speculative where the creditor feared the value of its collateral would decrease, but the possibility remained that under the debtor's plan the value could also still increase).

Furthermore, monetary injury alone is insufficient to satisfy the second factor. *See In re Quade*, 496 B.R. at 528; *see also In re Holstine*, 458 B.R. 392, 397 (Bankr. E.D. Mich. 2011) (finding that the liquidation of funds held by the debtors did not constitute irreparable injury); *Rossi, McCreery and Assoc. Inc., v. Abbo (In re Abbo)*, 191 B.R. 680, 683 (Bankr. N.D. Ohio 1996) (indicating that monetary harm by itself is not irreparable injury).

11

Debtors contend that without the stay in place the Debtors will suffer the irreparable loss of the farm and the farming operations as a result of the foreclosure and waiver argument on the redemption period thereby causing the farm to be sold on a foreclosure sale in a short period of time. Debtors believe that they will lose the farm and also roughly $500,000 of equity in the property (although State Bank disputes this amount of equity). Debtors note that this loss of the farming occupation and the future livelihood of their son who wants to be a farmer are irreparable harm.

The Debtors' son is not the debtor, so unfortunately his aspirations do not factor into whether the *debtors* will suffer irreparable loss.

There is some amount of equity in the property. The estimate of the Debtors is based on their estimate of fair market value. The Bankruptcy Code does not define this term. There are, however, various contexts that illustrate the meaning and application of the term. This is particularly true as it relates to secured creditors. The most common definition is the price determined in an arm's-length transaction between a willing buyer and a willing seller in a free market. Here, however, the Debtors are not willing sellers, nor is an arm's-length transaction proposed. To the contrary, the Debtors seek to keep the property. Perhaps, in that context, it could be said the amount posited as the value is what the Debtors believe they would need to pay to purchase a similar property, so it is the value to the Debtors.

State Bank agrees there is some equity. But it points to the repeated defaults in payment and the failures to keep current on real estate taxes. It

also identifies the inability in two prior cases to confirm and perform a Chapter 12 plan as indicators that a more appropriate value for determining the equity cushion would be the proceeds likely to be obtained at a foreclosure sale.

*BFP v. Resolution Trust Corp.,* 511 U.S. 531 (1994), is instructive in that regard. The United States Supreme Court held in the context of a mortgage foreclosure sale that using fair market value as the "benchmark against which determination of reasonably equivalent value [was] to be measured" was "not consistent with the text of the Bankruptcy Code." *Id.* at 536-37. This was, the Court stated, because, among other things, the concept of fair market value "has no applicability in the forced-sale context." *Id.* at 537. The *BFP* Court held "that a fair and proper price, or a 'reasonably equivalent value,' for foreclosed property, is the price in fact received at the foreclosure sale, so long as all the requirements of the State's foreclosure law have been complied with." *Id.* at 545.

At the hearing on the Motion, counsel for State Bank confirmed that a likely "floor" for confirmation of a sheriff sale would be a price at least 60% of the estimated fair market value as may be adjusted by other factors in the particular case. If this were the measure, the equity cushion would decrease to about $132,000.[7] That amount would be eroded by continuing accrual of

---

[7] Debtors estimate the fair market value of the property to be $1,227,165. The result of a calculation based on 60% of this amount is $736,299. This estimate of an alternative equity is calculated by reducing this amount by the unpaid 2020 real estate taxes ($22,833) and $580,853 in indebtedness to State Bank. (ECF No. 106 – Debtors' liquidation analysis). It does not account for continued accrual of interest, costs, or fees or interest on unpaid real estate taxes.

13

interest, costs, and fees on the indebtedness to State Bank as well as any interest on unpaid real estate taxes.

Nor does this Court believe that a failure to stay every part of the Court's Order would cause irreparable harm to the movants. Debtors were unable, for instance, to articulate why simply entering a judgment in the state court foreclosure action but prohibiting execution or a sheriff sale pending a decision on the appeal would harm the Debtors.

Debtors, Lynnview, and Gary and Joyce defaulted on obligations to State Bank in 2018. The Lynnview bankruptcy stayed any action by or remedy of State Bank until after February 2020. A foreclosure action was then started but came to a halt in September 2020 when Debtors filed their first Chapter 12. In January 2021, Debtors (and their co-debtors) and State Bank reached an agreement on a stipulation that included immediate entry of judgment in state court and a 175-day redemption period. They agreed the redemption period would expire July 1, 2021. The Debtors' first case was dismissed in April 2021 and State Bank returned to state court. Debtors did not redeem, but, instead, filed the instant case. Defaults continue, including unpaid real estate taxes.

Debtors have already had not only the 175 days to redeem as part of the stipulation, but more than three years to address and resolve their default. They have already had substantial opportunity to find a way to avoid the harm they say would be irreparable and they have failed to do so. The duration of

any stay pending appeal plus 30 days is sufficient to provide yet another opportunity for Debtors to address the debt to State Bank.

All the same, giving the Debtors the benefit of any doubt, the threshold burden of this factor may be satisfied. If the requested stay is not imposed, State Bank would likely pursue a foreclosure sale on its collateral. If successful, Debtors could lose their farm and farming operations. If the property was sold and this Court's decision were overturned, the Debtors would have lost the farm and their farming operations. That would make a Chapter 12 hard to accomplish. Thus, this Court finds that the threshold burden of the second factor is satisfied.

### 3. *Harm to Other Parties in Litigation*

Debtors argue that a stay of the Order does not harm State Bank because they believe State Bank has a significant equity cushion of roughly $500,000. According to the Debtors, even if the appeal takes one year and there is accruing interest on the loan and attorneys' fees, it will only use up a fraction of the equity cushion. In response, State Bank disputes the Debtors' assertion that there is a $500,000 equity cushion as it does not reflect the liquidation value of the real estate, ongoing attorneys' fees, or unpaid real estate taxes.

The Court finds that State Bank would be harmed if a stay is granted. The Bankruptcy Code entitles a secured creditor to receive periodic adequate protection payments against the risk of diminution in value of the collateral. *See*, for example, 11 U.S.C. §§ 361 and 362. Adequate protection payments

maintain the status quo so as to protect against erosion in both the value of collateral and secured position. *See Price v. Del. State Police Fed. Credit Union (In re Price),* 370 F.3d 362, 373 (3d Cir. 2004). If no payments are made to State Bank, such erosion will occur.

Debtor's conduct has caused State Bank's debt to increase through accrued interest, missed real estate taxes, and additional expenses and attorneys' fees in this case, the state court action, and the pending appeal. Without payments to State Bank during the pendency of the appeal, any equity cushion that may exist would be eroded. There would be further erosion if there is a failure to quickly pay the unpaid real estate taxes because of the interest that accrues on those taxes and if any additional real estate taxes due during the pendency are unpaid.

The Bankruptcy Code permits a secured creditor to receive periodic payments against the risk of diminution of the value of the collateral. State Bank's interests would be adversely affected without payments or other protections. There is also, based on the repeated failures of the Debtors to make payments of adequate protection or real estate taxes, a marked risk of continued harm to State Bank.

*4. Whether a Stay is in the Public Interest*

The Supreme Court of the United States has identified the public policy behind bankruptcy as the equality of distribution to creditors under the priorities established by the Code within a reasonable time frame. *See Begier v. I.R.S.,* 496 U.S. 53, 58 (1990). Courts have found further delays in litigation to

16

be contrary to that public policy, and therefore not in the public interest. *Doctors Hosp. of Hyde Park, Inc. v. Desnick (In re Doctors Hosp. of Hyde Park, Inc.),* 376 B.R. 242, 249 (Bankr. N.D. Ill. 2007); *see In re Quade,* 496 B.R. at 530.

Debtors state that there is no public interest in the foreclosure action by State Bank or in the lift of stay and dismissal of the Chapter 12 proceedings because (1) the parties are all private parties and (2) foreclosures happen on a regular basis in everyday life which does not involve public interest.

Debtors' arguments are unavailing. First, the fact that the parties are "private parties" does not affect whether a requested stay is in the public interest. You do not have to be a "public party" for a public policy interest to be implicated.

Second, there is a public interest in judicial economy and preventing unreasonably prolonged proceedings. *See, e.g., In re Quade*, 496 B.R. at 530 ("further delay during an appeal may negatively impact the public interest by extending litigation past a reasonable time"). "The public has an interest in the fair and judicious application of the bankruptcy laws to the specific facts of each case." *Gonzalez Class Action Plaintiffs v. Freedom Commc'ns Holdings, Inc. (In re Freedom Commc'ns Holdings, Inc.*, No. 09-13046 (BLS), 2009 WL 4506553, at *2 (D. Del. Dec. 4, 2009). Given the repeated filings and continual delays of State Bank's attempts to foreclose on the real estate, the requested stay has the potential to unreasonably prolong proceedings and thus it is not in the public interest to grant the relief.

17

Finally, the Court notes that the bankruptcy court is a court of equity. The reorganization of a business involves a "balancing act between the debtor, the secured creditors, the unsecured creditors, and other interested parties, all overseen by the bankruptcy court. The public has an interest in the fair and judicious application of the bankruptcy laws to the specific facts of each case." *Id.*

For these reasons, the Debtors have failed to establish that no public interest is at play. There is such an interest.

Debtors have failed to meet the substantial showing required for the first factor but have met the burden on the second factor. The third and fourth factors favor denial of a stay. Pursuant to the Court's authority under Rule 8007 to tailor relief to protect the rights of all parties in interest, the Court may nonetheless provide a form of relief.

Rule 8007 provides that "the bankruptcy court may: (1) suspend or order the continuation of other proceedings in the case; or (2) issue any other appropriate orders during the pendency of an appeal to protect the rights of all parties in interest." Fed. R. Bankr. P. 8007. The Seventh Circuit addressed the flexibility of Rule 8007 in *Forty–Eight Insulations,* stating, "As is the case with other forms of equitable relief, a court's decision to deny a . . . stay is highly discretionary." *In re Forty-Eight Insulations, Inc.*, 115 F.3d at 1301. While the Seventh Circuit addressed the court's discretion in *denying* a stay, this freedom of choice also applies in fashioning alternative relief for the parties in

interest. The court in *Westwood Plaza Apts.* addressed this discretionary authority:

> . . . [the] Rule . . . provide[s] the Court with discretionary power when determining whether to grant a stay upon appeal . . . with its more flexible language authorizing a court to uniquely tailor relief to the circumstances of the case. . . . Further, [it] provides a court with substantially broader discretion than that afforded by Rule 7062.

*In re Westwood Plaza Apts., Ltd.*, 150 B.R. 163, 165 (Bankr. E.D. Tex. 1993). This "discretionary power" brings with it the ability to give greater weight to particular factors in a given case. *In re Charter Co.*, 72 B.R. 70, 72 (Bankr. M.D. Fla. 1987). The factors may be balanced against each other despite one factor not being met. *In re Dakota Rail, Inc.*, 111 B.R. at 820.

## CONCLUSION

For these reasons, the Court concludes that Debtors' Motion should be granted in part and denied in part in the manner described above.

As a result, the Court finds it appropriate to impose a conditional stay. The conditions, as detailed in the accompanying Order, require payment of the 2021 real estate taxes on the State Bank real estate collateral, payment of all unpaid real estate taxes for any prior years on State Bank's real estate collateral, escrow for future real estate taxes on such real estate, and monthly interest payments to State Bank. The stay shall remain in effect until the earlier of a breach of any of these conditions or such time as the underlying appeal becomes final. Further, the stay will be conditioned on the entry of a state court judgment as more particularly described in the accompanying Order.

19

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

Dated: January 27, 2022

                                          BY THE COURT:

                                          _____
                                          Hon. Catherine J. Furay
                                          U.S. Bankruptcy Judge